FILED
2021 Nov-30  AM 09:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT
### COURT FOR THE NORTHERN DISTRICT
### OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARCUS MAURICE COLVIN, JR.** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No.2:19-cv-08009-KOB** |
| | ) | **2:17-cr-404-KOB-SGC** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Respondent.** | ) | |

### MEMORANDUM OPINION

On November 28, 2017, Marcus Maurice Colvin, Jr. pled guilty to one count of being a felon in possession of a firearm pursuant to a plea agreement with the Government, and the court sentenced him to 87 months imprisonment.  (Cr. Docs. 11 & 27).  This case is now before the court on Mr. Colvin's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 and memorandum in support, the Government's response in opposition, and Mr. Colvin's reply.  (Cv. Docs. 1, 2, 8, & 11).[1]

Mr. Colvin asserts that his counsel was ineffective for failing to advise him of the collateral consequences of his plea of guilty on his then pending state court criminal cases.  Mr. Colvin claims that he asked his counsel "questions regarding how his plea would affect cases he had pending in Shelby County, Alabama," but counsel "ignored his questions and informed him that everything would be fine[;] he would serve his 87 months in Federal Custody, and get out and be on probation."  (Cv. Doc. 2 at 1).  Mr.

---

[1] Documents from Mr. Colvin's criminal trial, case number 2:17-cr-404-KOB-SGC, are designated "Cr. Doc.___." Documents from Mr. Colvin's § 2255 action, case number 2:19-cv-08091-KOB, are designated "Cv. Doc. ___."

Colvin states that, when he asked counsel about the collateral consequences at the time he signed his federal plea agreement, counsel became angry and told him that he would "tell the U.S. Attorney that he wanted to go to trial and he would be found guilty and sentenced to a longer period of incarceration than he was facing by entering the plea." Mr. Colvin argues that he was "taken aback by [counsel's] threat and under extreme duress which led to [him] moving forth with the plea agreement." (Cv. Doc. 11 at 2).

Mr. Colvin claims that had counsel informed him of the consequences of his federal plea on his state criminal cases, he would have instead pled *nolo contendere,* so the factual basis of his federal case could not have been used against him in state criminal court. (Cv. Doc. 2 at 2). He argues that counsel allowing him to admit to the underlying facts of the federal charge "gave the Shelby County District Attorney's office advantage of being able to use his admissions and subsequent plea against him with regard to his [then] pending [state] cases." (Cv. Doc. 2 at 4).

Mr. Colvin does not dispute the facts underlying his federal claim, claim he is innocent, or want a different sentence; he wants the opportunity to enter a plea of nolo contendere instead of a normal plea of guilty. (Cv. Doc. 2 at 3).

After reviewing Mr. Colvin's motion to vacate, the court finds that his arguments lack merit. Accordingly, for the reasons below, the court will **DENY** Mr. Colvin's motion to vacate, set aside, or correct his sentence.

## I.    BACKGROUND

In May 2017, Mr. Colvin met J.S., who listed an AK-47 for sale on Armslist.com, and J.S.'s girlfriend M.D., to buy a Romarm/Cugir AK-47 pistol from J.S. After Mr.

2

_

Colvin put the AK-47 in his backpack, J.S. asked for payment.  Mr. Colvin then "drew a
Ruger .40 caliber pistol from his waistband, pointed it at J.S. and M.D., and told them to
leave."  When the victims drove past Mr. Colvin attempting to leave the area, he fired
three to five shots at them.  A witness saw Mr. Colvin run into 140 Creek Way Run,
which turned out to be Mr. Colvin's mother house.  His mother persuaded Mr. Colvin to
"come outside and be arrested."  Pursuant to a state search warrant for the house into
which Mr. Colvin ran, officers found both guns.  (Cr. Doc. 11 at 3-4).

The State of Alabama charged Mr. Colvin with attempted murder and robbery in
the first degree.  (Cr. Doc. 11 at 4).  And, in August 2017, the federal government
indicted Mr. Colvin for *two* counts of being a felon in possession of a firearm in violation
of 18 U.S.C. §922(g)(1). (Cr. Doc. 1).  The court appointed Jeffery Bramer as counsel
for Mr. Colvin.  Pursuant to a plea agreement, Mr. Colvin pled guilty to Count One only,
and the Government agreed to dismiss Count Two at the time of sentencing.  (Cr. Doc.
11 & text order on November 28, 2017).

After the plea hearing but before sentencing, Mr. Colvin filed a motion on March
27, 2018 to "get a new attorney" because Mr. Bramer was "not working in [his]favor."
Mr. Colvin claimed that Mr. Bramer was doing a "great job" in the beginning and
"making sure [he] knew what was going on with [his] case," but Mr. Bramer had not
brought Mr. Colvin his pre-sentence report or discussed it with him.  (Cr. Doc. 14).  The
magistrate judge held a hearing on that motion on April 4, 2018, at which Mr. Colvin
raised no other issues or complaints other than not receiving a copy of his pre-sentence
report. (Cr. Doc. 31).

During the hearing, the magistrate judge explained to Mr. Colvin that Mr. Bramer had not yet provided Mr. Colvin with a copy of the pre-sentence report because Probation had not provided it to Mr. Bramer. (Cr. Doc. 31 at 7). Although the magistrate judge indicated that she would grant Mr. Colvin's request for new counsel, he changed his mind and wanted to proceed to sentencing with Mr. Bramer as his counsel. (Cr. Doc. 31 at 9-10). The court sentenced Mr. Colvin on June 1, 2018 to 87 months imprisonment on Count One to run concurrent with any sentences in his state criminal cases and dismissed Count Two at the Government's request pursuant to the plea agreement. (Cr. Docs. 11 & 27).

Mr. Colvin then filed the instant action to vacate, set aside, or correct his sentence pursuant to § 2255 and memorandum in support of his motion on February 22, 2019. (Cv. Docs. 1 & 2). After a preliminary review of Mr. Colvin's motion, the court ordered the government to show cause why the court should not grant Mr. Colvin's motion. (Cv. Doc. 3). The government responded on May 22, 2019, arguing that the court should summarily deny all of Mr. Colvin's claims as without merit. (Cv. Doc. 8). The court found the case ready for summary disposition and ordered Mr. Colvin to submit any additional evidence to support his ineffective assistance of counsel claim on or before June 28, 2019. (Cv. Doc. 10 ).

Mr. Colvin then hired counsel, who filed an untimely reply to the government's response in July 2019. (Cv. Doc. 11). The government filed a motion to strike the untimely reply. After giving Mr. Colvin's counsel an opportunity to respond to the motion to strike, the court denied that motion in September 2019 and allowed Mr.

4

Colvin's reply.  (Cv. Docs. 11, 12, 13, 14, & 15).

According to the Probation Office, the federal court gained custody of Mr. Colvin on a writ from the State of Alabama and returned him to state custody after his federal sentencing.  The state criminal court sentenced Mr. Colvin on August 31, 2020 on his state assault and robbery charges, for which he is currently serving a 300-month sentence.  Because his federal sentence runs concurrently with his state sentence, his entire federal sentence could be served while in state custody.

According to the Probation Office, the Federal Board of Prisons has not officially calculated the amount of time left on Mr. Colvin's federal sentence. But because he was sentenced by this court in June 2018, his 87-month federal sentence has not expired even though Mr. Colvin is currently in state custody.  So, this habeas matter is ripe for resolution.

## II.    LEGAL STANDARD

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI; *see Strickland v. Washington*, 466 U.S. 668, 684 (1984). To prevail on a claim of ineffective assistance of counsel, Mr. Colvin must demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness, *and* (2) that he suffered prejudice as a result of that deficient performance. *See Strickland*, 466 U.S. at 684-91.  *Strickland*'s two-part analysis applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill v. Lockhart*, 106 S. Ct. 52, 58-59 (1985).

Mr. Colvin has the burden to prove *both* prongs of *Strickland* to demonstrate

ineffective assistance of counsel, and the court "'need not address both prongs if the petition has made an insufficient showing on one of them.'" *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1254 (11th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697).

Deficient performance is "'representation [that] f[alls] below an objective standard of reasonableness.'" *Hardwick v. Sec'y, Fla. Dep't of Corr.*, 803 F.3d 541, 551 (11th Cir. 2015) (citing *Strickland*, 466 U.S. at 688). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). The only question is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Id*. Counsel is presumed to have acted reasonably. *Strickland*, 466 U.S. at 690. A reviewing court "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

In the context of a guilty plea, a defendant can overcome the otherwise voluntary and intelligent character of his guilty plea only if he can establish that the advice he received from counsel in relation to the plea was not within the range of competence demanded of attorneys in criminal cases. *Goggins v. Sec'y, Dep't of Corr.*, No. 20-11033-J, 2020 WL 5625170, at *1 (11th Cir. Aug. 13, 2020) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

Counsel's "failure to advise his client of collateral consequences of pleading guilty, other than deportation, is not a Sixth Amendment violation." *Sims v. United States*, 785 F. App'x 632, 634 (2019) (citing *Chaidez v. United States*, 578 U.S. 342, 356 (2013) (noting that the Supreme Court had abrogated this rule only in the context of

deportation).  But, "affirmative misadvice" about the collateral consequences of a guilty plea may constitute ineffective assistance of counsel because "'certain considerations are so important that misinformation from counsel may render the guilty plea constitutionally uninformed.'"  *Sims*, 785 F. App'x at 634 (quoting *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 (11 th Cir. 1985)).

A petitioner shows prejudice if "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Mr. Colvin must show more than "the error had some conceivable effect on the outcome of the proceeding." See i*d.* at 693.  To show prejudice when a defendant challenges his plea based on ineffective assistance of counsel, he must show a reasonable probability that but for the ineffective assistance of counsel, "'he would have not pleaded . . . and would have insisted on going to trial.'"  *Durham v. Sec'y, Dep't of  Corr.*, 834 F. App'x 843, 847 (11th Cir. 2020 (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)).  Where counsel affirmatively misadvises a defendant about the collateral consequences of his plea, he can show prejudice by proving that "he would not have pled guilty and would have proceeded to trial, even if the possibility of acquittal was highly unlikely."  *Sims*, 785 F. App'x at 635 (citing *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017)).

The representations of a defendant at the plea hearing, as well as the district court's findings based on those representations, "constitute a formidable barrier in any subsequent collateral proceedings."  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (superseded by the AEDPA on other grounds).  Those representations made under oath at the plea hearing "carry a strong presumption of verity."  So, "contentions that are wholly

incredible on the face of the record" are without merit and subject to summary disposition without a hearing. *Adams v. United States*, 2019 WL 4643730 *1 (11th Cir. 2019) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)); *Blackledge*, 431 U.S. at 73-74.

## III.   DISCUSSION

Mr. Colvin claims that Mr. Bramer provided ineffective assistance of counsel by failing to inform him of the collateral consequences of his federal plea on his state criminal cases.  This court disagrees.

*Deficient Performance*

Mr. Colvin must show that Mr. Bramer's "'representation fell below an objective standard of reasonableness.'" *See Hardwick v. Sec'y, Fla. Dep't of Corr.*, 803 F.3d 541, 551 (11th Cir. 2015) (citing *Strickland*, 466 U.S. at 688).  Even if the court found all of Mr. Colvin's factual allegations on this issue credible, his claim still fails.

Mr. Bramer's failure to inform Mr. Colvin of the collateral consequences of his federal plea on his state criminal cases does not constitute deficient performance.  Mr. Bramer's "failure to advise his client of collateral consequences of pleading guilty, other than deportation, is not a Sixth Amendment violation."  *See Sims v. United States*, 785 F. App'x 632, 634 (2019) (citing *Chaidez v. United States*, 578 U.S. 342, 356 (2013) (noting that the Supreme Court had abrogated this rule only in the context of deportation).  So, Mr. Bramer's failure to advise Mr. Colvin of the effects of his federal criminal plea of guilty on his state criminal cases would not rise to the level of ineffective assistance of counsel.

And, based on Mr. Colvin's allegations, Mr. Bramer did not affirmatively

8

misadvise him of those collateral consequences.  *See Sims*, 785 F. App'x at 634 (quoting

*Downs-Morgan v. United States*, 765 F.2d 1534, 1541 (11th Cir. 1985) ("affirmative

misadvice" about the collateral consequences of a guilty plea may constitute ineffective

assistance of counsel where the "'misinformation from counsel renders the guilty plea

constitutionally uninformed'").  Mr. Colvin does not allege that Mr. Bramer told him

something untrue or misadvised him about the collateral consequences on his state

criminal cases.  Instead, Mr. Colvin states that he asked Mr. Bramer "questions regarding

how his plea would affect cases he had pending in Shelby County, Alabama," but Mr.

Bramer *ignored* his questions.  (Cv. Doc. 2 at 1).

 Mr. Bramer claims that Mr. Colvin never asked him about the collateral

consequences on his state criminal cases. (Cv. Doc. 8-1 at 2).  But even crediting Mr.

Colvin's allegation that he asked Mr. Bramer specifically about the collateral

consequences on his state criminal cases but he ignored Mr. Colvin, Mr. Bramer's

alleged actions in ignoring Mr. Colvin's questions does not equate to "affirmative

misadvice." Based on Mr. Colvin's allegation in his § 2255 motion, Mr. Bramer gave

him *no* advice on the issue. And as the court already noted, counsel's failure to advise

Mr. Colvin of the collateral consequence of his federal criminal plea on his state criminal

cases does not constitute ineffective assistance of counsel.

 Interestingly, Mr. Colvin states that Mr. Bramer ignored his questions but said

"everything would be fine, he would serve his 87 months in Federal Custody, and get out

and be on probation."  (Cv. Doc. 2 at 1).  Mr. Bramer pointed out in his affidavit that, at

the time Mr. Bramer allegedly made this statement prior to the plea and sentencing, he

did not know that Mr. Colvin would get 87 months and "[i]t would have been impossible

for [Mr. Bramer] to tell Mr. Colvin about the sentence being 87 months prior to sentencing." (Cv. Doc. 8-1 at 2). Although the court cannot make credibility determinations without a hearing and has credited Mr. Colvin's version of the facts, Mr. Bramer makes a good point.

And the record itself undermines Mr. Colvin's claims that he asked Mr. Bramer questions about the collateral consequences of his federal criminal plea on this state criminal cases, but Mr. Bramer ignored and refused to answer those questions. First, in the hearing before the magistrate judge regarding Mr. Colvin's motion to appoint new counsel, Mr. Colvin never claimed that Mr. Bramer refused to answer his questions about the collateral consequences of his plea; Mr. Colvin only complained that Mr. Bramer had not provided him with a copy of the Pre-Sentencing Investigation report. *See* (Cr. Doc. 14 & 31 at 7-11). The magistrate judge specifically asked Mr. Colvin if he had sufficient time to talk to Mr. Bramer about "any other concerns about him continuing to represent [him] in this case," and Mr. Colvin indicated, "Yes, Ma'am." And Mr. Colvin chose to continue with Mr. Bramer as his attorney even though the magistrate judge offered to get Mr. Colvin new counsel. (Cr. Doc. 31 at 7-11).

In his Guilty Plea Advice of Rights Certification, Mr. Colvin represented, in writing, that he was satisfied with Mr. Bramer's representation of him and had no complaints about Mr. Bramer. (Cr. Doc. 10 at 4). And the court asked Mr. Colvin at the plea hearing if he was "satisfied with Mr. Bramer and the work he has done for [him]," and Mr. Colvin responded, "Yes, Ma'am." (Cr. Doc. 32 at 7, 17, 21). These representations fly in the face of Mr. Colvin's current allegations that Mr. Bramer refused to answer Mr. Colvin's questions about the collateral consequences of his plea.

And, during the plea hearing on November 28, 2017, this court specifically asked Mr. Colvin if he had "any questions about the meaning of the [plea] agreement or how it might affect [him] that [Mr. Bramer] was not able to answer to [his] satisfaction," and Mr. Colvin responded, "No Ma'am." So, Mr. Colvin indicated under oath that he had no questions specifically about the effects of his plea that Mr. Bramer did not answer to his satisfaction. Mr. Colvin's answer to this specific question directly contradicts the allegations he now makes in his habeas motion.

Mr. Colvin's representations at the hearing on his motion for new counsel, in his Advice of Rights Certification, and at the plea hearing belie Mr. Colvin's allegations that Mr. Bramer ignored his questions about the collateral consequences on his state criminal case. These representations made under oath "carry a strong presumption of verity" and show that Mr. Colvin's allegations are "wholly incredible on the face of the record." *See Adams v. United States*, 2019 WL 4643730 *1 (11th Cir. 2019) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)).

Mr. Colvin also claims that Mr. Bramer threatened him and placed him under extreme duress to make Mr. Colvin sign the plea agreement. Mr. Colvin alleges that when he asked Mr. Bramer about the collateral consequences at the time he signed his federal plea agreement, Mr. Bramer became angry and told him that he would "tell the U.S. Attorney that he wanted to go to trial and he would be found guilty and sentenced to a longer period of incarceration than he was facing by entering the plea." Mr. Colvin argues that he was "taken aback by [counsel's] threat and under extreme duress which led to [him] moving forth with the plea agreement." (Cv. Doc. 11 at 2).

11

But, again, Mr. Colvin's statements under oath at the plea hearing contradict this allegation. The court specifically asked Mr. Colvin if anyone had "promised [him] anything or threatened [him] in any way to get [him] to enter a plea of guilty," and he responded, "No, Ma'am." (Cv. Doc. 32 at 10). Mr. Colvin's statement under oath that no one threatened him in any way to enter his plea undermines this allegation in his habeas petition.

So, the court finds that, even under Mr. Colvin's version of the facts, Mr. Bramer's failure to advise Mr. Colvin of the collateral consequences of his federal plea on his state criminal cases was not deficient performance. And even if he could *somehow* show deficient performance based on Mr. Bramer affirmatively misadvising him of the collateral consequences of his plea, Mr. Colvin has failed to show prejudice.

*Prejudice*

The prejudice analysis in Mr. Colvin's case is a bit peculiar. Normally, a defendant claiming ineffective assistance based on counsel's affirmative misadvice about the collateral consequences of his plea can show prejudice by proving that "he would not have pled guilty and *would have proceeded to trial*, even if the possibility of acquittal was highly unlikely." *See Sims*, 785 F. App'x at 635 (citing *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (emphasis added)). But in this case, Mr. Colvin does not want to go to trial and "takes no issue with the 87[-] month sentence." He wants instead for the court to vacate his plea of guilty, give him an opportunity to enter a plea of *nolo contendere*, and sentence him again to 87 months imprisonment.

The court is unsure if it could give Mr. Colvin his requested remedy *if* it granted his habeas motion pursuant to 28 U.S.C. § 2255. Under § 2255, if the court vacates and

12

sets aside the defendant's conviction, it "must choose from four distinct remedies: (1) discharge the prisoner; (2) resentence the prisoner; (3) grant the prisoner a new trial; or (4) correct the prisoner's sentence." *United States v. Brown*, 879 F.3d 1231, 1235 (11th Cir. 2018) (citing 28 U.S.C. § 2255). Here, Mr. Colvin does not ask the court to discharge him from prison, resentence him, grant him a new trial, or correct his sentence. In fact, he does not contest his sentence and does not claim his innocence. He simply wants the court to vacate his conviction, allow him to then enter a plea of *nolo contendere*, and then give him the same sentence. The court can find no case law from the Eleventh Circuit, or any other federal court for that matter, that would allow such relief in a § 2255 proceeding.

Assuming *arguendo* that the court could grant Mr. Colvin the relief he seeks under § 2255, Colvin *arguably* could show prejudice if a reasonable probability exists that but for Mr. Bramer's deficient performance, Mr. Colvin would have pled *nolo contendere*. *See Strickland*, 466 at 694 (a movant can show prejudice if "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). But Mr. Colvin has failed to make that showing.

Mr. Colvin simply *assumes* that he could have entered a plea of *nolo contendere*. But a defendant does not have an automatic right to plead *nolo contendere*. Rather, a defendant may plead *nolo contendere* only with the court's consent after it "considers the parties views and the public interest in the effective administration of justice." Fed. R. Crim. P. 11(a)(3). Mr. Colvin has failed to set forth any reasons why a reasonable

13

probability exists that the court would have allowed him to plead *nolo contendere*.

And the Government indicates that it would have objected to the entry of a *nolo contendere* plea in this case "based, at least partially, on the egregious and relevant behavior described in the factual basis for the Plea Agreement." *See* (Cv. Doc. 8 at 11). Under Fed. R. Crim. P. 11(a)(3), the court would have considered the Government's opposition and agreed that Mr. Colvin's egregious actions in this case involving the robbery and attempted murder of the two victims would have precluded the court's consent for a *nolo contendere* plea.  And Mr. Colvin has presented no argument or facts that would have caused the court to allow him to enter a plea of nolo contendere in this case. So, he has failed to show that any alleged deficient performance prejudiced him.

Moreover, the court notes that the plea agreement specifically states that a plea of nolo contendere would have voided the plea agreement. So, had the court allowed Mr. Colvin to enter a plea of *nolo contendere*, Count Two still would have been in play and Mr. Colvin would have faced an increased prison sentence.  *See* (Cv. Doc. 8 at 11).  Not only has Mr. Colvin failed to show a reasonable probability that the court would have consented to a nolo contendere plea (which it would not have done), he also has failed to show a reasonable probability that he would have rejected the plea agreement offered by the Government to dismiss Count Two and enter a *nolo contendere* plea instead, which would have increased his federal sentence. Mr. Colvin seems to simply ignore that a plea of *nolo contendere* could only have been for both Counts One and Two and would have resulted in prison sentence much higher than the 87 months he received for only Count One.

14

So, the court finds that neither the record nor Mr. Colvin's allegations, taken as true, show any deficient performance or prejudice as required by *Srickland*.

## IV.    CONCLUSION

For all of the reasons above, Mr. Colvin's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 lacks merit. Therefore, the court finds that Mr. Colvin's motion should be **DENIED**.

The court will enter a separate Final Order.

**DONE** and **ORDERED** this 30th day of November, 2021.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE